ELLIS K. ORLOWITZ COMPANY *v.* UNITED STATES (No. 5097)*

---

*C.A.D. 816.

United States Court of Customs and Patent Appeals,
February 13, 1963

*James R. Sharp, Myron Solter* (*Sharp & Bogan*, of counsel) for appellant.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General, *Andrew P. Vance*,
Chief, Customs Section (*Daniel I. Auster*, of counsel) for the United States.

[Oral argument November 8, 1962, by Mr. Sharp and Mr. Vance]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr.,
Associate Judges

RICH, Judge, delivered the opinion of the court:

 This appeal is from the judgment of the United States Customs
Court, Third Division, Appellate Term, A.R.D. 136, which affirmed
the judgment of the trial court in Reap. Dec. 9544, 43 Cust. Ct. 548.
The appeal involves the Antidumping Act of 1921 and more specifi-
cally, section 201(a) of this Act (19 U.S.C. Sec. 160(a)), as amended
by the Customs Simplification Act of 1954, 89 Treas. Dec. 242, 245,
T.D. 53599. Section 201(a), as amended, reads:

Whenever the Secretary of the Treasury (hereinafter called the "Secretary")
determines that a class or kind of foreign merchandise is being, or is likely to be,
sold in the United States or elsewhere at less than its fair value, he shall so ad-
vise the United States Tariff Commission, and the said Commission shall deter-
mine within three months thereafter whether an industry in the United States
is being or is likely to be injured, or is prevented from being established, by
reason of the importation of such merchandise into the United States. The
said Commission, after such investigation as it deems necessary, shall notify the
Secretary of its determination, and, if that determination is in the affirmative,
the Secretary shall make public a notice (hereinafter in this Act called a "find-
ing") of his determination and the determination of the said Commission. The
*Secretary's finding shall include a description of the class or kind of merchandise*
to which it applies in such detail as he shall deem necessary for the guidance of
customs officers.

Two issues are presented by this appeal: (1) the sufficiency of the
*basis* for the Tariff Commision's "determination" under section
201(a); (2) the legal effect of the Secretary's failure to make public,
in his "determination," a verbatim copy of the Commission's deter-
mination.

The involved merchandise is cast iron soil pipe, other than so-
called "American pattern," exported from the United Kingdom and

entered at the port of Philadelphia, Pennsylvania, on October 5, 1954.[1]

The instant case developed as follows:

A complaint alleging dumping of British soil pipe in the United States was filed with the Secretary of the Treasury by the Fraters Valve & Fitting Company, a Los Angeles, California, producer of cast iron soil pipe. The precise date on which this complaint was filed is not clear from the record.

Pursuant to the requirements of section 201 (a), *supra*, the Secretary made his finding concerning "fair value" and on July 26, 1955, so advised the Chairman of the Tariff Commission, the Honorable Edgar B. Brossard. This communication reads in part:

> In accordance with section 201(a), Antidumping Act, 1921, as amended, you are hereby advised that cast iron soil pipe from the United Kingdom is being, or is likely to be, sold in the United States at less than fair value as that term is used in the Antidumping Act.
>
> The Bureau of Customs will be glad to make available to the Tariff Commission the Bureau's file on sales or likelihood of sales at less than fair value for the Commission's use in connection with its investigation as to whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the United States.

On August 2, 1955, the Tariff Commission issued a public notice that it had "instituted an investigation under section 201 (a) of the Antidumping Act, 1921, as amended, to determine whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise [i.e., cast iron soil pipe from the United Kingdom] into the United States." On October 21, 1955, a public hearing was held by the Commission concerning its above investigation; the result of the hearing was a letter, dated October 26, 1955, sent by the Tariff Commission to the Secretary of the Treasury, which stated in part:

> After investigation in accordance with the provisions of section 201 (a) of the Antidumping Act, 1921, as amended, including a public hearing, the Commission, by a majority vote (Commissioners Brossard, Talbot, and Dowling), has determined that a domestic industry in the United States is being, or is likely to be, injured by reason of the importation of cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom at less than fair value.

---

[1] The distinctions between so-called British and American pattern soil pipe appear to reside in such factors as pipe and hub lengths, and wall thicknesses. For example, Mr. A. S. W. Love, representing the American Brass & Iron Foundry of Oakland, California, in his testimony in the Tariff Commission hearing in the instant case, noted infra, stated:

> In four-inch single hub soil pipe, the British pattern is a piece of pipe which measures from the one end to the other, from the spigot to the hub, 72 inches, an exact six feet, of which three inches is given over to hubbing.
>
> The laying length, therefore, is 69 inches.
>
> The American pattern, that is the WWP401 standard specification for our domestic producer's soil pipe, is a length 63 inches long, three inches given over to the hub, meaning that the laying length is 5 feet.

*The domestic industry to which the Commission's determination of injury relates was held to consist of the producers of cast iron soil pipe in the State of California* (Commissioner Sutton dissenting). Commissioners Sutton and Jones disagreed with the majority of the Commission's findings that the California producers of cast iron soil pipe are being, or are likely to be, injured by reason of the importation of cast iron soil pipe from the United Kingdom at less than fair value. [Emphasis ours.]

Commissioner Schreiber, who, after participating in the hearing, was called to the West Coast because of illness in the family, has advised the Commission of his views in this case, and they are in accord with the views of the majority.

On October 27, 1955, the Secretary of the Treasury published the following finding (20 F.R. 8269) :

After due investigation, in accordance with the provisions of section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. 160(a)), the United States Tariff Commission on October 26, 1955, notified the Secretary of the Treasury of its determination that the industry manufacturing cast iron soil pipe in the United States is being, or is likely to be injured, by reason of the importation into the United States of cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom.

Pursuant to the provisions of said section 201(a) of the Antidumping Act of 1921, as amended, I find that cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom is being, or is likely to be, sold in the United States at less than its fair value.

Appellant stipulated at the trial that "The instant appeal to reappraisement is limited by plaintiff solely to its contention that the appraisal of the instant merchandise under the Antidumping Act of 1921 is illegal, null, and void." Not in issue on appeal to this court are (a) the Secretary's determination that the instant merchandise "is being, or is likely to be, sold in the United States or elsewhere at less than its fair value" and (b) the Tariff Commission's determination that the California producers of cast iron soil pipe are being or are "likely to be injured" by reason of the importation of the instant merchandise.

### The "Determination" of the Tariff Commission

Appellant supports its above-noted contention by first stating that the Tariff Commission's determination of injury or likelihood of injury to "the producers of cast iron soil pipe in the State of California" was an insufficient basis on which to conclude that "an industry in the United States is being or is likely to be injured." Appellant states in this regard that:

* * * the term "an industry in the United States" as used in the Antidumping Act of 1921, as amended, is clear and unambiguous, and thus is to be given its ordinary and usual meaning, *i.e.*, all of the producers in the United States of a specific article or commodity.[2]

---

[2] The California producers of cast iron soil pipe, six in number, constitute somewhere between approximately 17% and 10% of the producers of such soil pipe in the United States. Appellant alleges that there are a minimum of sixty to seventy U.S. cast iron soil pipe producers. The staff report of the Tariff Commission, however, as stated by Commissioner Talbot at the Commission's October 21, 1955 hearing, showed "only 36." This disparity of opinion is not reconciled in the record before us.

We cannot agree with appellant that the words "an industry in the United States" (a) clearly and unambiguously mean "all of the producers in the United States of a specific article or commodity" and (b) clearly and unambiguously do *not* mean "just those [producers] in one geographical area." Neither do we agree with the statements of Judge Johnson in his concurring opinion below that:

> * * * the statute uses the words "*an* industry *in* the United States," not *the* industry producing comparable merchandise, or *the American* industry, or *the* industry *of* the United States. The language used does not indicate a congressional intent to limit the term "industry" to the entire American industry in all cases, but rather the contrary. This is borne out by the subsequent legislative history set forth in the majority opinion.

We think that ▬ the meaning of the above-quoted words from section 201(a) is *not* clear. We therefore agree with the Customs Court that it is necessary first to ascertain, if possible, "what Congress did intend" by these words.

The Customs Court discussed in some detail the legislative history of section 201(a) of the 1921 Antidumping Act prior and subsequent to its enactment. After so doing it concluded (Customs Court's emphasis):

> It is not necessary for us to lay down a broad definition of "industry" that will be applicable to every situation. What we are under the duty of determining, and this is all we are required to decide, is whether in finding that the "dumping" of cast iron soil pipe from Great Britain injured, or was likely to injure, the cast iron soil pipe industry of the State of California, the Tariff Commission acted in accordance with the authority delegated to it by Congress, to determine whether there was, or was likely to be *injury to a domestic industry in the United States.* We find that the Commission acted within its delegated authority.

We have carefully reviewed the Custom Court's analysis of the legislative history of section 201(a), and both appellant's and the Government's position relative thereto. While we find ourselves in substantial agreement with the lower court's analysis and with the conclusions it drew therefrom, we find it unnecessary, for the reasons that follow, to base our decision thereon.

We note appellant's allegation of "absurd results" flowing from the Tariff Commission's determination that injury or likelihood of injury in a particular geographic area is sufficient for a finding of injury under the Antidumping Act. Appellant states (emphasis appellant's):

> Under Article I, § 8(1) of the Constitution duties must be "uniform"; therefore, dumping duties must be imposed upon all imports of soil pipe at all ports. It follows that the vast bulk of the *uninjured*, [3] non-California por-

---

[3] We note in passing that we are unable to find any logical basis for concluding, as does appellant, that (emphasis appellant's):

> In finding that six California producers were likely to be injured, the Tariff Commission *by necessary implication found that the remainder of the soil pipe producers were not threatened with injury by the imports.*

tion of the industry will obtain benefits which the statute reserves for an industry that "is being or is likely to be injured". This is patently absurd, and this absurdity is heightened by the facts of the present case. Plaintiff sold the imported product only in the Philadelphia area since soil pipe is shipped in bulk (not in crates), is quite fragile, and is very heavy. For these reasons freight rates are high. For example, freight rates to the West Coast were prohibitive, approximately 100% of the "landed cost" of the goods, making competition with West Coast producers impossible. For the same reason, the West Coast producers could not compete in the East. Consequently, we have the situation of a Philadelphia importer paying additional dumping duties because of a threat of "injury" to the California segment of the soil pipe producing industry in the United States, a segment which could not possibly have been injured by the imports on the East Coast.

Appellant's argument seems to overlook the words of the statute which refer not only to actual injury but to the likelihood of injury. Even if we were to agree that California manufacturers of cast iron soil pipe would in no way be *directly* injured by the dumping of British pattern cast iron pipe *in Philadelphia*, it is clear, for the very constitutional reason that appellant espouses, that a *likelihood* of injury to cast iron soil pipe manufacturers in California, and in other geographical areas, might nevertheless exist.[4] We note the following uncontroverted statements of the Government:

The instant case is a so-called test case. The records of the Customs Court show that there are 70 cases pending before that Court which have been suspended thereunder. Those cases likewise involve such or similar cast iron soil pipe other than "American pattern", exported from the United Kingdom and entered at the ports of Philadelphia, Pa. (1), Portland, Oregon (1), Los Angeles, Cal. (50) and San Francisco, Cal. (18).

Speaking very technically, appellant is correct when it states that "The dumping duty * * * that is involved in this case is an amount of approximately $1,050 [to be levied on one East Coast importation]." The facts of this case when taken as a whole, however, lead us to conclude that the Tariff Commission was entirely correct in considering, inter alia, the *likely* effects its determination would eventually have on West Coast producers of cast iron soil pipe, who would be forced to bear the primary economic effects of importations of British cast iron soil pipe. We think that the existence or non-existence of competition, *per se*, between producers of a particular commodity in various geographic sections of the United States is not a *conclusive* factor in such determinations as this.

---

[4] We are unable to determine whether the Tariff Commission felt that the California producers of cast iron soil pipe would be directly injured or that there was only the likelihood of injury to such producers because of the instant importation. The Commissioner's reference to its "determination of injury" is somewhat ambiguous when viewed in the light of its determination that "a domestic industry in the United States is being, or is *likely to be* injured by reason of the [instant] importation. [Emphasis ours.]" The above determination, however, clearly does comprehend the *likelihood* of injury to West Coast (California) producers of cast iron soil pipe.

We emphasize, as did the Customs Court, that this court is not attempting to "lay down a broad definition of 'industry' [as used in section 201(a)] that will be applicable to every situation." We merely state that the facts of the instant case amply justify the conclusion reached by the Customs Court that the Tariff Commission "acted within its delegated authority."

Had the Tariff Commission omitted its gratuitous definition of "The domestic industry to which the Commission's determination of injury relates" and merely stated its determination in the words of the statute, we think it unlikely that this appeal would ever have been taken. It seems to us it is only because of the specific language used by the Commission in stating the *basis* for its determination, that the problems of the instant case have arisen. We are unable to agree with appellant, however, that even in using this language the Commission acted in a manner contrary to discernable Congressional intent.

We think it clear that the Tariff Commission considered the nationwide effect its determination would have. The Commission had evidence before it (a) that the market area of the California producers includes "The seven Western states," and (b) that in several of these states competition existed from U.S. producers of cast iron pipe from states other than California. Such producers would obviously also be affected by the dumping of British cast iron soil pipe on the West Coast. Accordingly, we do not think that the Commission intended to limit itself to the State of California when it determined broadly, essentially in the words of the statute, that "a domestic industry in the United States is being, or is likely to be, injured." We consider *this* determination to be the basic determination of the Commission. We cannot agree with appellant that there is anything in the Commission's further statement referring to the California producers of cast iron soil pipe that would indicate that the Commission intended to limit geographically its actual determination that "a domestic industry in the United States is being, or is likely to be, injured."

For the above reasons, even if appellant's mistaken analysis of the statutory history of section 201(a) were correct, a determination of injury, or the *likelihood* of injury, of the *national* scope which we think was found by the Tariff Commission in the instant case, would clearly be considered properly based.

## *The Secretary's "Determination"*

Appellant alleges that the Secretary fatally erred in not reporting verbatim the determination of the Commission. Primary emphasis is placed by appellant on the Secretary's reference to the Commission's "determination that *the* industry manufacturing cast iron soil pipe

in the United States is being, or is likely to be injured * * *." [Our emphasis.]

We think this contention is amply answered by the following statement in the Government's brief in this court:

Appellant's contention seemingly is that when the Secretary used "the", instead of "an", in referring to "the industry manufacturing cast iron soil pipe in the United States" he made void an otherwise valid administrative action.

\* \* \* \* \* \* \*

* * * The statute does *not* require that the Secretary's action be published in the Federal Register, but merely that he "make public a notice". The Secretary nevertheless did publish his finding in the Federal Register, 20 Fed. Reg. 8269 (Exhibit 7), and also as a Treasury Decision, T.D. 53934, 90 Treas. Dec 354, and in the Weekly Treasury Decisions Advance Sheets of November 3, 1955, Vol. 90, No. 44, page 7. (See paragraph 16 of stipulation, R. 23). Further, in a press release of October 27, 1955, he made public the result of his finding and, above and beyond all statutory requirements, he published the whole of the Commission's letter of October 26, 1955.

We add, in conclusion, that ▇ appellant, having admittedly had in addition to the best of all notices, *actual* notice, of the determinations of both the Secretary of the Treasury and the Tariff Commission, cannot be heard to complain as to the sufficiency of its notice of the content of these determinations.

The judgment of the Customs Court is *affirmed*.

MARTIN, J., sat but did not participate in decision.